**GABRIELLI LEVITT LLP**
Michael J. Gabrielli
Michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 103
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICARLOS GUZMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRIDENT SEAFOODS CORPORATION and COSTCO WHOLESALE CORPORATION,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff, Ricarlos Guzman ("Plaintiff" or "Guzman"), a resident of New York, individually and on behalf of other similarly situated individuals, by and through his counsel, upon personal knowledge as to his own acts and status, and upon information and belief based upon the investigation of counsel as to the remaining allegations, alleges as follows:

### I.  INTRODUCTION

1. This is a nationwide consumer class action brought by Plaintiff on behalf of all individuals ("Class Members") who purchased the product, Kirkland Signature Wild Alaskan Fish Oil (the "Product"), for personal use and not for resale.

2. Trident Seafoods Corporation and Costco Wholesale Corporation ("Defendants" or "Trident" or "Costco") advertise, market, sell and distribute the Product in 1400 mg soft gel pills. According to the Product label, each soft gel provides 1050 mg Omega Unsaturated Fatty Acids comprising of:

Total Omega-3 Fatty Acids                                      330 mg

| | |
|---|---|
| Other Omega Fatty Acids 5, 6, 7, 9 & 11 | 720 mg |
| Other Fatty Acids | 270 mg |

*See,* Product photos, annexed hereto as **Exhibit 1**.

3. In reality, however, and according to independent lab tests, Defendants' Product does not contain the listed amount of Other Omega Fatty Acids (omega-5, 6, 7, 9 and 11). Moreover, there is no scientific literature available to support the contention that omega-11 fatty acids are typically found in fish oil.

4. As such, the Product label is false, deceptive and misleading, and in violation of almost every state warranty, consumer protection, and product labeling law in the United States.

## II. PARTIES

5. This is a nationwide consumer class action brought by Plaintiff on behalf of all individuals ("Class Members") who purchased the product, Kirkland Signature Wild Alaskan Fish Oil (the "Product"), for personal use and not for resale.

6. During the relevant period, Class Members in New York and throughout the United States purchased the Product through numerous Costco retail locations. Plaintiff and Class Members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth in this Complaint.

7. Plaintiff, Ricarlos Guzman, is a resident of Oceanside, New York. He purchased the Product in New York for his own use during the three years preceding the filing of this Complaint, most recently at a Costco located in Westbury, New York.

8. Defendant, Trident, is a Washington corporation, with a principal place of business at 5303 Shilshole Avenue N.W., Seattle, Washington. Trident was, at all relevant times, engaged in commercial transactions throughout the United States and the State of New York, including this judicial District.

9. Defendant, Costco, is a Washington corporation, with a principal place of business at 999 Lake Drive, Issaquah, Washington. Costco was, at all relevant times, engaged in commercial transactions throughout the United States and the State of New York, including this judicial District.

### III. JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over Plaintiff's class claims pursuant to 28 U.S.C. § 1332(d) because the combined claims of the proposed Class Members exceed $5,000,000 and because Defendants are citizens of a different state than Plaintiff and most Class Members.

11. This Court has personal jurisdiction over Defendants because they regularly conduct business in this District.

12. Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and: (2) 28 U.S.C. § 1391(b)(3) in that Defendants are subject to personal jurisdiction in this District.

### IV. FACTUAL ALLEGATIONS

13. Fish oil is the fat or oil that's extracted from fish tissue. It is one of the most commonly consumed dietary supplements.

14. Fish oil has been shown to have numerous benefits, including, but not limited to: (i) reducing triglycerides, (ii) reducing blood pressure levels in people with high blood pressure, (iii) reducing insulin resistance, (iv) reducing chronic inflammation, (v) helping to fight several autoimmune diseases, including type 1 diabetes, rheumatoid arthritis, ulcerative colitis, Crohn's disease and psoriasis, and (vi) potentially decreasing the risk of some types of cancer, including colon, prostate and breast cancer.[1]

15. Naturally, these findings have sparked interest in fish oil products.

16. In fact, the global market for fish oil is projected to reach $1.7 billion by 2018.[2]

17. The back label of the Product clearly states that the product contains 1050 mg Omega Unsaturated Fatty Acids comprising of:

---

[1] See, e.g., http://www.drwhitaker.com/the-benefits-of-fish-oil-supplements/ (last visited February 27, 2017)
[2] http://www.iffo.net/node/735 (last visited February 27, 2017)

| | |
|---|---|
| Total Omega-3 Fatty Acids | 330 mg |
| Other Omega Fatty Acids 5, 6, 7, 9 & 11 | 720 mg |
| Other Fatty Acids | 270 mg |

*See,* **Exhibit 1.**

18. Defendants, however, are fully aware that their Product does not contain the listed amount of omega fatty acids 5, 6, 7, 9 & 11 and that their Product label is thus misleading. Moreover, there is no scientific literature available to support the contention that omega-11 fatty acids are typically found in fish oil.

18. Plaintiff's counsel had the Product tested which showed that it does not contain the listed amount of omega fatty acids 5, 6, 7, 9 & 11.

19. Based on these test results, Defendants' claim that their Product contains 720 mg of omega fatty acids 5, 6, 7, 9 & 11 is false.

20. Here, the difference between the Product promised and the Product sold is significant. The lack of the promised omega fatty acids 5, 6, 7, 9 & 11 in the Product fully diminishes the value of the Product. Consumers, including Plaintiff and Class Members, would not have purchased the Product had they known it did not contain the listed amount of omega fatty acids 5, 6, 7, 9 & 11.

21. At all relevant times, Defendant directed the above-referenced statements and claims to consumers in general and Class Members in particular, as evidenced by their eventual purchases of the Product.

22. The above facts all add up to a single conclusion: Defendants developed and knowingly employ a marketing strategy designed to deceive consumers. The only conceivable purpose of this scheme is to stimulate sales and enhance Defendants' profits.

23. Plaintiff and Class Members were in fact misled by Defendants' representations and marketing of its Product. The absence of the listed amounts of omega fatty acids 5, 6, 7, 9 & 11 leaves little reason to purchase the Product at all, since countless other proven and less-expensive fish oil supplements exist.

24. Plaintiff and Class Members would not have purchased the Product had they known the truth about the Product or Defendants' scheme to sell the Product as a misbranded supplement.

25. As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the Class members in that they:

(i) paid a sum of money for a product that was falsely represented;

(ii) paid more for a product that was falsely represented than they would have paid had the product not been falsely represented;

(iii) were deprived the benefit of the bargain because the Product they purchased was different from what the Defendants warranted;

(iv) were deprived the benefit of the bargain because the Product they purchased had less value than what was represented;

(v) did not receive a product that measured up to their expectations as created by Defendants;

(vi) ingested a substance that was other than what was represented; and

(vii) ingested a substance that was of a lower quality than what Defendants promised.

26. Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been injured as listed above. Accordingly, Plaintiff and the Class members have suffered "injury in fact" as a result of Defendants' wrongful conduct.

27. Plaintiff and the Class members all paid money for the Product but did not obtain the full value of the advertised products due to Defendants' misrepresentations and omissions. Plaintiff and the Class members purchased, purchased more of, or paid more for, the Product than they would have had they known the truth about the Product. Accordingly, Plaintiff and the Class members have suffered "injury in fact" and lost money or property as a result of Defendants' wrongful conduct.

28. Nonetheless, Plaintiff would continue to purchase the Product again in the future if it were reformulated so that it did, in fact, contain the listed amount of omega fatty acids.

29. Plaintiff contends that the Product was sold pursuant to unfair and unconscionable trade practices because the sale of the Product offends public policy and is immoral, unethical, oppressive, unscrupulous, and caused substantial economic injuries to Plaintiff and Class Members.

30. Therefore, the Product is valueless, and not worth the purchase price that Plaintiff and Class Members paid for it, and/or is not what Plaintiff and Class Members reasonably intended to receive.

31. Accordingly, Plaintiff seeks, individually and on behalf of all other similarly situated purchasers of the Product during the Class Period, actual economic damages equaling the aggregate purchase price paid for the Product by Plaintiff and Class Members during the Class Period.

32. Plaintiff also seeks declaratory relief in the form of an order declaring Defendants' conduct to be unlawful, as well as injunctive and equitable relief putting an end to Defendants' misleading and unfair business practices and/or a reformulation of the Product so that it does, in fact, contain the listed amount of omega fatty acids.

## V. CLASS ALLEGATIONS

33. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

34. This action is maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

35. The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the claims and certain issues in this action on behalf of a Class of individuals defined as:

> All persons who purchased the Product within the United States from the beginning of any applicable limitations period through the date of class certification (the "National Class" or "the Class").

36. Additionally, Plaintiff brings this action on behalf of himself and all other similarly situated New York residents (the "New York Sub-Class"), defined as follows:

All persons who purchased the Product within the State of New York from the beginning of any applicable limitations period through the date of class certification (the "New York Class Period").

37. Excluded from the Class and the New York Sub-Class are (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

38. Plaintiff brings the Class and the New York Sub-Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

39. Plaintiff reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

40. All members of the Class and New York Sub-Class were and are similarly affected by the deceptive advertising of the Defendants, and the relief sought herein is for the benefit of Plaintiff and members of the Class and New York Sub-Class.

41. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

42. **Numerosity – Federal Rule of Civil Procedure 23(a)(l).** At this time, Plaintiff does not know the exact number of the Class and New York Sub-Class members. Based on the annual sales and popularity of the Product, it is readily apparent that the number of consumers in the Class and New York Sub-Class is so large as to make joinder impracticable, if not impossible. Class and New York Sub-Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

43. **Commonality and Predominance -Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class and New York Sub-Class that predominate over questions that may affect individual Class and New York Sub-Class members include:

a. Whether the marketing, advertising, packaging, labeling and other promotional materials for the Product are deceptive;

b. Whether Defendants' practices and representations related to the marketing, labeling and sales of the Product were unfair, deceptive, fraudulent, and/or unlawful in any respect, thereby violating New York law;

c. Whether Defendants' actions violated various State consumer fraud and protection statutes;

d. Whether Defendants breached a warranty created through the labeling and marketing of the Product; and

e. Whether Defendants were unjustly enriched at the expense of the Plaintiff and Class Members.

44. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

45. **Typicality - Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the Class and New York Sub-Class, as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class and New York Sub-Class is common to the Class and New York Sub-Class members. Plaintiff, like all members of the Class and New York Sub-Class, relied on Defendants' false and misleading representations and purchased the Product, or paid more for the Product, than Plaintiff would have paid if the Product had been properly labeled, and sustained injury from Defendants' wrongful conduct. Further, there are no defenses available to Defendants that are unique to Plaintiff.

46. **Adequacy of Representation - Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class and New York Sub-Class. Plaintiff is an adequate representative of the Class and New York Sub-Class because his interests do not conflict with the interests of the Class and New York Sub-Class members he seeks to represent, and he has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class and New York Sub-Class. Undersigned counsel has represented consumers in a variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

47. **Insufficiency of Separate Actions - Federal Rule of Civil Procedure 23(b)(l).** Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(l).

48. **Predominance and Superiority of Class Action.** The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class and New York Sub-Class Member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

49. Individual joinder of the Class and New York Sub-Class Members is not practicable, and questions of law and fact common to the Class and New York Sub-Class predominate over any questions affecting only individual Class and New York Sub-Class Members. Each Class and New York Sub-Class Member has been damaged and is entitled to recovery as a result of the violations alleged herein.

50. Moreover, because the damages suffered by individual members of the Class and New York Sub-Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class and New York Sub-Class Members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

51. Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

52. **Declaratory and Injunctive Relief.** Certification also is appropriate under Rule 23(b)(2) because Defendants acted, or refused to act, on grounds generally applicable to the Class and New York Sub-Class, thereby making appropriate the injunctive relief sought on behalf of the

Class and New York Sub-Class. Further, given the large number of consumers of the Product, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

## CAUSES OF ACTION
## COUNT I

### (Violation of New York General Business Law § 349: Mislabeling)
### On Behalf of the New York Sub-Class

53. The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

54. Defendants have labeled the Product as containing 720 mg of omega fatty acids 5, 6, 7, 9 & 11. In reality, however, and according to independent lab tests, Defendants' Product does not contain the listed amount of omega fatty acids 5, 6, 7, 9 & 11. Moreover, there is no scientific literature available to support the contention that omega-11 fatty acids are typically found in fish oil.

55. Defendants have violated, and continue to violate, § 349 of the New York General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendants' violation of § 349, Plaintiff and other members of the Class and New York Sub-Class have suffered damages in an amount to be determined at trial.

56. Pursuant to New York General Business Law § 349, Plaintiff seeks an order of this Court that includes, but is not limited to, enjoining Defendants from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

57. Plaintiff and the other members of the Class and New York Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

58. The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff and the other members of the Class and New York Sub-Class.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT II

### (Violation of the New York General Business Law § 350) On Behalf of the New York Sub-Class

59. The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

60. New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

61. GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

62. Plaintiff and the members of the Class and New York Sub-Class are consumers who purchased the Product in New York.

63. As sellers of goods to the consuming public, Defendants are engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

64. Defendants' representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Defendants' advertising fails to reveal material facts with respect to the Product, as described above, constitute false advertising in violation of the New York General Business Law.

65. Defendants' false advertising was knowing and intentional.

66. Defendants' actions led to direct, foreseeable, and proximate injury to Plaintiff and the Class and New York Sub-Class.

67. As a consequence of Defendants' deceptive marketing scheme, Plaintiff and the other members of the Class and New York Sub-Class suffered an ascertainable loss, insofar as they would not have purchased the Product had the truth been known, or would have purchased the Product on different terms, and as a result of Defendants' conduct, they received a product of less value than what they paid for.

68. By reason of the foregoing, Defendants are liable to Plaintiff and the other members of the Class and New York Sub-Class for actual damages or five hundred dollars ($500) for each sale of the Product (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

69. Plaintiff and the other members of the Class and New York Sub-Class further seek to enjoin the false advertising described above.

70. Absent injunctive relief, Defendants will continue to deceptively market the Product.

THEREFORE, Plaintiff prays for relief as set forth below.

### COUNT III

**Breach of Express Warranty (On Behalf of the National Class and New York Sub-Class)**

71. Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

72. Plaintiff, and each member of the National Class, formed a contract with Defendants when Plaintiff and the other members of the National Class purchased the Product. The terms of the contract included the promises and affirmations of fact made by Defendants on the Product's packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the National Class and Defendants.

73. Plaintiff and the members of the National Class performed all conditions precedent to Defendants' liability under this contract when they purchased the Product.

74. On January 24, 2017, Plaintiff, on behalf of himself and the National Class, provided Defendants with sufficient notice of their breach of the express warranties provided on the label of the Product. *See*, **Exhibit 2**, annexed hereto.

75. By providing pre-suit notice, Plaintiff has effectively notified the Defendants of the troublesome nature of his transaction within a reasonable time of discovering the breach.

76. Despite providing the above notice to the Defendants that the Product does not meet Defendant's warranties and in fact fails in many respects to perform consistent with the Product's representations, Defendants continue to hide the facts from consumers and fails to correct the

material misrepresentations regarding defects of the Product. Rather, Defendants continue to market and sell the Product in a misleading and deceptive manner.

77. Actual and/or constructive notice was duly given to Defendants of the breaches of these warranties, and Defendants have yet failed to cure.

78. Defendants breached express warranties about the Product and its qualities because Defendants' statements about the Product were false and the Product does not conform to Defendants' affirmations and promises described above.

79. Plaintiff and the members of the National Class would not have purchased the Product had they known the true nature of the Product.

80. As a result of Defendants' breach of warranty, Plaintiff and each member of the National Class has been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases.

## COUNT IV
### Breach of Implied Warranty (On Behalf of the National Class and New York Sub-Class)

81. Plaintiff incorporates paragraphs 1 through 80 as if fully set forth herein.

82. Defendants knew and intended that the members of the National Class would be the ultimate consumers of the Product.

83. Defendants sold the Product into the stream of commerce and the Defendants are merchants with respect to goods such as the Product at issue.

84. The Product was not merchantable at the time of sale, because it did not, nor could not, have any impact related to the representations as alleged herein.

85. Plaintiff and the other members of the National Class did not receive the benefit of their bargain in purchasing the Product.

86. Because of Defendants' breach of the implied warranty, the Plaintiff and the other members of the National Class were injured.

87. As a result of Defendants' breach, Plaintiff and the other members of the National Class have sustained damages.

## COUNT V

### (Unjust Enrichment)
### On Behalf of the Class and New York Sub-Class

88. Plaintiff incorporates paragraphs 1 through 87 as if fully set forth herein.

89. Plaintiff and the other members of the National Class and New York Sub-Class conferred benefits on Defendants by purchasing the Product.

90. Defendants have been unjustly enriched in retaining the revenues derived from the purchases by Plaintiff and the other members of the National Class and New York Sub-Class of the Product. Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Product was misleading to consumers, which caused injuries to Plaintiff and the other members of the National Class and New York Sub-Class because they would have not purchased the Product if the true facts would have been known.

91. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the National Class and New York Sub-Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and the other members of the National Class and New York Sub-Class for their unjust enrichment, as ordered by the Court.

## COUNT VI

### (Violation of State Consumer Protection Statutes)
### On Behalf of Plaintiff and the Class

92. Plaintiff incorporates paragraphs 1 through 91 as if fully set forth herein.

93. Plaintiff and Class Members have been injured as a result of Defendants' violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendants' fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

94. Defendants' conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a. **Alaska:** Defendants' practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b. **Arizona:** Defendants' practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*

c. **California:** Defendants' practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*, and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*

d. **Colorado:** Defendants' practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

e. **Connecticut:** Defendants' practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

f. **Delaware:** Defendants' practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

g. **District of Columbia:** Defendants' practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

h. **Florida:** Defendants' practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

i. **Hawaii:** Defendants' practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

j. **Idaho:** Defendants' practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

k. **Illinois:** Defendants' acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

l. **Indiana:** Defendants' practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

m. **Kansas:** Defendants' practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

n. **Kentucky:** Defendants' practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

o. **Maryland:** Defendants' practices were and are in violation of Maryland's

Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

p.  **Massachusetts:** Defendants' practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws Ch. 93A, § 2.

q.  **Michigan:** Defendants' practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

r.  **Minnesota:** Defendants' practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

s.  **Missouri:** Defendants' practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

t.  **Nebraska:** Defendants' practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

u.  **Nevada:** Defendants' practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

v.  **New Hampshire:** Defendants' practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

w.  **New Jersey:** Defendants' practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

x.  **New Mexico:** Defendants' practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

y.  **New York:** Defendants' practices were in and are in violation of New York's Gen. Bus. Law §§ 349 and 350, *et seq.*

z.  **North Carolina:** Defendants' practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

aa.  **North Dakota:** Defendants' practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

bb.  **Ohio:** Defendants' practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

cc.  **Oregon:** Defendants' practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

dd.  **Pennsylvania:** Defendants' practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

ee.  **Texas:** Defendants' practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

ff.  **Utah:** Defendants' practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

gg.  **Vermont:** Defendants' practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

hh.  **Washington:** Defendants' practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

ii.  **Wisconsin:** Defendants' practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

95.   Defendants violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Product contains containing 720 mg of omega fatty acids 5, 6, 7, 9 & 11 when, in reality, Defendants' Product does not contain the listed amount of omega fatty acids and, in addition, there is no scientific literature available to support the contention that omega-11 fatty acids are typically found in fish oil.

96.   Defendants' misrepresentations were material to Plaintiff's and Class Members' decision to pay a significant premium for the Product.

97.   Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

98.   As a result of Defendants' violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a significant premium for the Product as compared to products serving the same purpose.

99.   As a result of Defendants' violations, Defendants have been unjustly enriched.

100.  Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special

damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment on behalf of himself and the proposed Class and New York Sub-Class providing such relief as follows:

A. Certification of the Class and New York Sub-Class proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff as representative of the Class and New York Sub-Class; and appointment of his undersigned counsel as counsel for the Class and New York Sub-Class;

B. A declaration that Defendants are financially responsible for notifying members of the Class and New York Sub-Class of the pendency of this suit;

C. An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Defendants as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein;

D. Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment and post-judgment interest at the maximum rate allowable by law;

E. Injunctive relief and statutory or actual damages pursuant to New York General Business Law § 349 and common law, enjoining Defendants' unlawful and deceptive acts;

F. Injunctive relief and statutory or actual damages pursuant to New York General Business Law § 350;

G. Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

H. Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

DATED: February 27, 2017

**GABRIELLI LEVITT LLP**

Michael J. Gabrielli (MG-2421)
michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 103
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

*Attorneys for Plaintiff and Proposed Classes*

## VERIFICATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NASSAU       )

RICARLOS GUZMAN, being duly sworn, deposes and says that I am a Plaintiff herein, have read this lawsuit and am familiar with the allegations, which are true to my own knowledge, except as to those matters stated therein to be alleged on information and belief, and as to those matters, I believe them to be true.

Attached hereto as Exhibit 1 are a true and correct photographs of the challenged advertising statement, which appears on Defendant's labels in New York and, upon information and belief, throughout the United States.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is both true and correct.

_____
Ricarlos Guzman

Sworn to before me
this 27th day of February, 2017.

_____
Notary Public

IRIS M. GABRIELLI, ESQ.
Notary Public, State of New York
No. 02GA6171652
Qualified in Nassau County
Commission Expires July 30, 2019